IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| JENNIFER K. CRATTY,<br><br>         Plaintiff,<br><br>vs.<br><br>MARTIN O'MALLEY, Commissioner of Social Security Administration,<br><br>         Defendant. | CV 22-142-BLG-TJC<br><br>**ORDER** |

      Plaintiff Jennifer K. Cratty ("Plaintiff") filed a complaint pursuant to 42 U.S.C. § 405(g) of the Social Security Act, requesting judicial review of the final administrative decision of the Commissioner of Social Security ("Commissioner") regarding the denial of her claim for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-433. (Doc. 2.) The Commissioner subsequently filed the Administrative Record ("A.R."). (Doc. 12.)

      Presently before the Court is Plaintiff's motion for summary judgment, seeking reversal of the Commissioner's denial of disability benefits and remand for an award of disability benefits, or alternatively for further administrative proceedings. (Doc. 16.) The motion is fully briefed and ripe for the Court's review. (Docs. 21, 22.)

1

For the reasons set forth herein, and after careful consideration of the record and the applicable law, the Court finds the ALJ's decision should be **AFFIRMED**.

I.   **PROCEDURAL BACKGROUND**

Plaintiff filed an application for disability insurance benefits and supplemental security income on July 2, 2018.  (A.R. 304-310.)  A hearing was held before Administrative Law Judge Michael Kilroy (the "ALJ") on November 3, 2021.  (A.R. 45-109.)  On December 14, 2021, the ALJ issued a written decision finding Plaintiff not disabled.  (A.R. 18-44.)  Plaintiff requested review of the decision, and the Appeals Council denied Plaintiff's request.  (A.R. 8-14.)  Thereafter, Plaintiff filed the instant action.  (Doc. 2.)

II.  **LEGAL STANDARDS**

   A.   **Scope of Review**

The Social Security Act allows unsuccessful claimants to seek judicial review of the Commissioner's final agency decision.  42 U.S.C. §§ 405(g), 1383(c)(3).  The scope of judicial review is limited.  The Court must affirm the Commissioner's decision unless it "is not supported by substantial evidence or it is based upon legal error."  *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999).  *See also Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) ("We may reverse the ALJ's decision to deny benefits only if it is based upon legal error or is

not supported by substantial evidence."); *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995).

"Substantial evidence is more than a mere scintilla but less than a preponderance." *Tidwell*, 161 F.3d at 601 (citing *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997)). "Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." *Flaten*, 44 F.3d at 1457. In considering the record as a whole, the Court must weigh both the evidence that supports and detracts from the ALJ's conclusions. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985); *Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975). The Court must uphold the denial of benefits if the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld."); *Flaten*, 44 F.3d at 1457 ("If the evidence can reasonably support either affirming or reversing the Secretary's conclusion, the court may not substitute its judgment for that of the Secretary."). However, even if the Court finds that substantial evidence supports the ALJ's conclusions, the Court must set aside the decision if the ALJ failed to apply the proper legal standards in weighing the evidence and reaching a

conclusion. *Benitez v. Califano*, 573 F.2d 653, 655 (9th Cir. 1978) (quoting *Flake v. Gardner*, 399 F.2d 532, 540 (9th Cir. 1968)).

### B. Determination of Disability

To qualify for disability benefits under the Social Security Act, a claimant must show two things: (1) the claimant suffers from a medically determinable physical or mental impairment that can be expected to last for a continuous period of twelve months or more, or would result in death; and (2) the impairment renders the claimant incapable of performing the work she previously performed, or any other substantial gainful employment which exists in the national economy. 42 U.S.C. §§ 423(d)(1)(A), 423(d)(2)(A). A claimant must meet both requirements to be classified as disabled. *Id*.

The Commissioner makes the assessment of disability through a five-step sequential evaluation process. If an applicant is found to be "disabled" or "not disabled" at any step, there is no need to proceed further. *Ukolov v. Barnhart*, 420 F.3d 1002, 1003 (9th Cir. 2005) (quoting *Schneider v. Comm'r of the Soc. Sec. Admin.*, 223 F.3d 968, 974 (9th Cir. 2000)). The five steps are:

1. Is claimant presently working in a substantially gainful activity? If so, then the claimant is not disabled within the meaning of the Social Security Act. If not, proceed to step two. *See* 20 C.F.R. §§ 404.1520(b), 416.920(b).

2. Is the claimant's impairment severe? If so, proceed to step three. If not, then the claimant is not disabled. *See* 20 C.F.R. §§ 404.1520(c), 416.920(c).

3. Does the impairment "meet or equal" one of a list of specific impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. If not, proceed to step four. *See* 20 C.F.R. §§ 404.1520(d), 416.920(d).

4. Is the claimant able to do any work that he or she has done in the past? If so, then the claimant is not disabled. If not, proceed to step five. *See* 20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f).

5. Is the claimant able to do any other work? If so, then the claimant is not disabled. If not, then the claimant is disabled. *See* 20 C.F.R. §§ 404.1520(g), 416.920(g).

*Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

Although the ALJ must assist the claimant in developing a record, the claimant bears the burden of proof during the first four steps, while the Commissioner bears the burden of proof at the fifth step. *Tackett v. Apfel*, 180 F.3d 1094, 1098, n.3 (citing 20 C.F.R. § 404.1512(d)). At step five, the Commissioner must "show that the claimant can perform some other work that exists in 'significant numbers' in the national economy, taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id*. at 1100 (quoting 20 C.F.R. § 404.1560(b)(3)).

### III.   THE ALJ'S FINDINGS

The ALJ followed the five-step sequential evaluation process in considering Plaintiff's claim. First, the ALJ found Plaintiff had not engaged in substantial gainful activity since June 7, 2018. (A.R. 24.) Second, the ALJ found that

Plaintiff had the following medically determinable severe impairments: unspecified personality disorder with paranoid and borderline features; post-traumatic stress disorder (PTSD); and cervical degenerative disc disease. (A.R. 24.)

Third, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals any one of the impairments in the Listing of Impairments. (A.R. 24-25.) Fourth, the ALJ stated Plaintiff has the RFC to:

> Perform light work as defined in 20 CFR 404.1567(b) with some exceptions. Specifically, the claimant is able to lift 20 pounds occasionally and 10 pounds frequently, is able to stand and/or walk about four hours in an eight-hour workday, and is able to sit for about six hours in an eight-hour workday. The claimant is never able to climb ladders, ropes, or scaffolds, is never able to crawl, is occasionally able to balance, stoop, kneel, and crouch, and must avoid concentrated exposure to extreme cold and to vibration. The claimant has limitations interacting with members of the public in person but not at arms-length. In other words, the claimant has no limitations interacting with members of the public such as over the computer or over the phone. Rather, the claimant is occasionally able to interact with members of the public in person in small groups (defined as no more than 2-3 people at any one time) and frequently able to interact with members of the public in person on a one-on-one basis.

(A.R. 25.)

The ALJ next found that Plaintiff was unable to perform her past relevant work, but could perform other jobs, such as router, collator operator, and office

helper.  (A.R. 35-36.)  Thus, the ALJ found that Plaintiff was not disabled.  (A.R. 37.)

## IV.   DISCUSSION

Plaintiff presents the following issues for review: (1) whether the ALJ complied with the obligation to develop a full and fair record at the hearing; (2) whether the ALJ properly weighed the opinion of Plaintiff's treating nurse practitioner and (3) whether all relevant limitations were properly incorporated into the vocational expert's hypothetical.  The Court will address each in turn.

### A.   Development of Full and Fair Record

Plaintiff asserts that the ALJ's manner of questioning her at the hearing violated his duty to develop the record.  Plaintiff argues the "ALJ went out of his way to verbally abuse her at the hearing." (Doc. 16.)  Plaintiff accuses the ALJ of repeatedly interrupting her in order to trigger her anxiety or prevent her from having the opportunity to present her testimony.  The Commissioner argues the ALJ did not stop Plaintiff's testimony, but rather redirected Plaintiff or asked for clarification on her answers.

"Social Security proceedings are inquisitorial rather than adversarial." *Sims v. Apfel*, 530 U.S. 103, 110 (2000).  As such, the ALJ "has an independent 'duty to fully and fairly develop the record and to assure that the claimant's interests are considered.'"  *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) (citing

*Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996)). This duty exists regardless of whether the claimant is represented. *Id.* The ALJ is presumed to be unbiased in carrying out this duty. *Bayliss v. Barnhart*, 427 F.3d 1211, 1215 (9th Cir. 2005). The presumption can be rebutted by showing "the ALJ's behavior, in the context of the whole case, was so extreme as to display clear inability to render fair judgment." *Id.* "But 'expressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women . . . sometimes display' do not establish bias." *Rollins v. Massanari*, 261 F.3d 853, 858 (9th Cir. 2001) (citing *Liteky v. United States*, 510 U.S. 540, 555-56 (1994)).

      Here, the record contradicts Plaintiff's contention that the ALJ was verbally abusive or unjustifiably interrupted her. At times the ALJ did redirect the Plaintiff to answer only the question asked of her. (*See e.g.* A.R. 58 ("ma'am, we're kind of limited of the time we have to do the hearing, so all you need to do is answer the question. If I think I need a reason or explanation, I'll ask that. And I'm sure Ms. Ward will do the same."); 64 ("Ma'am, again, you've answered the question. Just answer the questions, please.").) At other times, the ALJ interjected to prompt Plaintiff to provide a more specific answer (A.R. 68-69, 95-96) or to ask Plaintiff's counsel to refine her questioning (A.R. 77, 86). Although the ALJ may have come across as impatient and even annoyed at times, the record does not indicate the ALJ's demeanor rose to the level of inappropriate hostility that biased the proceedings or

8

prevented Plaintiff from explaining her impairments.  Further, the occasional crosstalk and interruptions by the ALJ are not surprising given the fact the hearing was conducted telephonically.  (A.R. 47.)

Accordingly, the Court finds no error with the ALJ's development of the record.

### B. Consideration of Medical Opinion

Plaintiff next argues the ALJ failed to properly consider the opinion of nurse practitioner Paul Tutokey, MSN, APRN, PMHNP-BC.  Plaintiff argues the ALJ disregarded the current regulations for evaluating medical opinions.  The Commissioner counters that the ALJ reasonably rejected Mr. Tutokey's opinion.

Because Plaintiff applied for benefits after March 27, 2017, the ALJ was required to consider the medical evidence under the revised regulations governing the evaluation of medical opinion evidence.  20 C.F.R. §§ 404.1520c, 416.920c.  Under the revised regulations, the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . . ."  20 C.F.R. §§ 404.1520c(a); 416.920c(a).  Rather, the ALJ is directed to consider medical opinions according to the following factors: supportability, consistency, relationship with the claimant, specialization, and other factors such as the medial source's familiarity with other evidence in the claim or understanding of the disability program requirements.  20 C.F.R. §§ 404.1520c(c)(1)-(5),

416.920c(c)(1)-(5).  The two most important factors are supportability and consistency, and the ALJ must explain how those factors were considered in the decision.  20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).  The ALJ is generally not required to explain how the remaining factors were considered, except when deciding among differing, yet equally persuasive opinions or findings on the same issue.  *Id.*  Under the new regulations the "ALJ's decision, including the decision to discredit any medical opinion, must simply be supported by substantial evidence."  *Woods v. Kijakazi*, 32 F.4th 785, 787 (9th Cir. 2022).

    Mr. Tutokey provided a letter concerning Plaintiff's "application for SS disability benefits."  (A.R. 901-902.)  Mr. Tutokey opined that due to Plaintiff's chronic PTSD, she would be limited to working "a part-time job 12-20 hours per week, in a position that does not include a lot of interfacing with other individuals[.]"  (A.R. 902.)  He further opined that the two areas of functioning Plaintiff would experience the most difficulty would be in interacting with others and adapting or managing one's self.  (*Id.*)  He stated that Plaintiff may require a special accommodation for extra or longer breaks.  (*Id.*)

    In evaluating the medical evidence in this case, the ALJ correctly recognized that he was to consider medical opinions under the revised regulations in 20 C.F.R. 404.1520c.  (A.R. 32.)  The ALJ set forth a fairly thorough discussion of Mr. Tutokey's care and treatment of Plaintiff.  (A.R. 32-34.)  The ALJ also considered

Mr. Tutokey's opinion in his letter, but did not find it "particularly probative." (A.R. 34.) Ultimately, the ALJ determined that the medical evidence supported a finding that Plaintiff had up to moderate limitations in interacting with others. (*Id.*) But the ALJ found Plaintiff had no more than mild limitations otherwise, and there was no support that she was limited to only part-time work activity. (*Id.*)

Although the ALJ did not use the words "supportability" or "consistency," in evaluating Mr. Tutokey's opinion, the ALJ substantively addressed these factors. "Supportability means the extent to which a medical source supports the medical opinion by explaining the 'relevant . . . objective medical evidence.'" *Id.* at 791-92 (quoting 20 C.F.R. § 404.1520c(c)(1)). The ALJ found Mr. Tutokey's opinion was not supported because Plaintiff had required only minor medication modifications since he began seeing her in late 2019, and his progress notes consistently described Plaintiff as doing well, often by her own self-reports. (A.R. 34.) An ALJ may discount medical opinions that are inconsistent with or unsupported by the medical provider's own clinical findings. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008).

The ALJ's observations are supported by the record. (*See* A.R. 859 ("presents today as generally quite well"); 864 ("presently endorses mild anxiety" and "describes mood today as, 'fantastic'"); 872 (noting an exacerbation of anxiety due to Plaintiff running out of her Xanax prescription and noting Plaintiff reported

11

Xanax "diminished her anxiety to a tolerable level when she has it available"); 875 (noting Plaintiff describes mood as "pretty good"); 878 (noting Plaintiff was "generally quite well"); 885 (noting Plaintiff "describes her moods most recently as anxious but feels she is coping well with the medicines"), 895 (noting "moods have been staying good" and "her as needed medicines continue to be quite effective for her anxiety"); 899 (noting Plaintiff presented "as generally well" and "feeling good").)

The ALJ also noted that the exacerbations of Plaintiff's symptoms were primarily related to situational stressors. (*Id.*)  This finding is also supported by the record. (*See* A.R. 859 (noting Plaintiff reported having a panic attack triggered by appearing on video for appointment); 877 (noting Plaintiff had increased anxiety associated with legal proceedings involving her ex-husband and mother's broken hip); 881 (noting Plaintiff reported severe anxiety after recent hysterectomy); 943 (noting Plaintiff had "intermittent moderate exacerbation of anxiety" related to ex-husband's release from jail, but otherwise Plaintiff reported "I have been feeling pretty good").)

The ALJ also substantively addresses the consistency factor. "Consistency means the extent to which a medical opinion is 'consistent . . . with the evidence from other medical sources and nonmedical sources in the claim.'" *Id*. at 792 (quoting 20 C.F.R. § 404.1520c(c)(2)).  In this regard, the ALJ found Mr.

Tutokey's opinion was inconsistent with Plaintiff's ability to work at her deli job, her enrollment in classes to become a school bus driver, her volunteer activity which required some extent of public contact, and her ability to take part in physical outdoor activities such as riding horses. (A.R. 34.) Again, the Court finds there is support for the ALJ's observations in the record. (*See* A.R. 65 (explaining truck driving classes were 6-8 hours a day, 5 days a week); 859 (noting Plaintiff reported liking her new job at a grocery store deli and was "getting along well with her peers"); 864 (noting Plaintiff worked nearly full time at grocery store and "that her job continues to go well"); 885 (noting Plaintiff was in school for truck driving); 898 (noting Plaintiff was doing some work for the senior center assisting elderly individuals with various tasks); 943 (noting Plaintiff "has made some friends through volunteering at the Roundup Senior Center").)

Accordingly, the Court finds the ALJ did not err in considering the medical opinion evidence.

    **C.**    **Consideration of Treatment/Vocational Expert Hypothetical**

Finally, Plaintiff argues the ALJ failed to incorporate all relevant limitations into the hypothetical questions posed to the vocational expert. Specifically, Plaintiff argues the ALJ failed to incorporate the frequency and duration of her medical treatment. The Commissioner counters that the ALJ was not required to specifically consider the frequency of Plaintiff's medical appointments.

13

Social Security Rulings ("SSR") 96-8p and 16-3p require the ALJ to consider the effects of medical treatment in developing the RFC.  SSR 96-8p requires the RFC assessment to be based on all relevant evidence, such as "[t]he effects of treatment, including limitations or restrictions imposed by the mechanics of treatment (e.g., frequency of treatment, duration, disruption to routine, side effects of medication)."  SSR 96-8p, 1996 WL 362207 at *34477.  SSR 16-3p relates more specifically to symptom evaluation, and requires that treatments received for pain or other symptoms be considered in evaluating the intensity, persistence, and limiting effects of an individual's symptoms.  SSR 16-3p, 2017 WL 5180304, at *8.

An ALJ's failure to consider the effect of a claimant's treatment needs may constitute reversible error.  *See Bourcier v. Saul*, 856 Fed. App'x 687, 691 (9th Cir. 2021); *Edmunds v. Kijakazi*, 2021 WL 4452762, at *6 (D. Mont. Sept. 29, 2021); *Jones v. Kijakazi*, 2022 WL 595729, at *4 (D. Mont. Feb. 28, 2022); *Chase v. Saul*, 2022 WL 819680, at *7-8 (D. Mont. Mar. 18, 2022); *Mariah v. Saul*, 2021 WL 1660947, at *8 (D. Mont. Apr. 28, 2021).  However, the Ninth Circuit recently clarified that no authority requires "the ALJ's RFC analysis to refer specifically to the number of appointments [the claimant] attended . . . ."  *Abrahams v. Kijakazi*, 2023 WL 4491744 (9th Cir. July 2023).

Here, Plaintiff states that she "required average monthly care 3.75 per month in 2020." (Doc. 16 at 26.) Even assuming this is an accurate reflection of the average number of medical appointments Plaintiff had in 2020, Plaintiff fails to cite to any medical opinions or evidence in the record showing that she would miss two or more days of work per month due to medical care. Moreover, there is no evidence to establish Plaintiff would be required to attend medical appointments during work hours or that her appointments would cause her to miss an entire day of work. Thus, the evidence in the record does not establish that Plaintiff's medical treatment would exceed the off-task limitation presented to the vocational expert. (*See* A.R. 103.)

Nevertheless, to the extent the ALJ erred in considering Plaintiff's treatment needs, any such error was harmless. "To show that an ALJ's error was not harmless, a claimant must demonstrate a 'substantial likelihood of prejudice.'" *Mariah*, 2021 WL 1660947, at *8. Plaintiff has not done so here. Plaintiff does not cite to any evidence in the record to demonstrate that her medical appointments would cause her to miss more than two days of work every month. Therefore, on this record, the Court cannot find a substantial likelihood of prejudice, and any error in the ALJ's consideration of treatment needs was harmless.

Furthermore, as discussed above, the Court has determined the ALJ adequately developed the record and supported his reasons for discounting the

opinion of Mr. Tutokey. Accordingly, the hypotheticals the ALJ relied on properly accounted for all of Plaintiff's limitations that the ALJ found to be supported by evidence in the record.

Therefore, the Court finds the ALJ's determination at step five is supported by substantial evidence.

## V.   CONCLUSION

Based on the foregoing, **IT IS ORDERED** that the Commissioner's decision is **AFFIRMED**, and Plaintiff's motion for summary judgment (Doc. 11) is **DENIED**.

DATED this 18th day of March, 2024.

_____
TIMOTHY J. CAVAN
United States Magistrate Judge